The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to draw an eye and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Thank you. You may be seated. Good morning, everyone. We're ready to hear argument in our one and only case this morning. So whenever you're ready. Thank you, Your Honor. May it please the Court, I'm Anne Hayes. I represent the appellant, Vincent Deritis, in this appeal. Mr. Deritis currently is serving a 50-year sentence for three offenses relating to the production of child pornography and one offense relating to the possession of child pornography. Mr. Deritis' convictions are infirm because with respect to the convictions, the evidence is insufficient to support the convictions. He also was denied the opportunity to present strong exculpatory evidence because of a judge's inaccurate legal decision that the evidence was hearsay. And there also was a problem with the jury instructions in that they didn't, they allowed him to be convicted for reasons not covered. Which is your strongest argument? Which do you think is your strongest argument? The sufficiency challenges to counts one and two, Your Honor. Oh, and why is that? I'll start on that. Well, on count one. What's the standard of review for that? The standard of review is taking the evidence, it's de novo, taking the evidence in the light most favorable to the government if the elements of the statute are met, Your Honor. Uh-huh. So, Mr. Deritis, in the light most favorable to the government, the evidence on count one showed that Mr. Deritis engaged in video voyeurism when he placed a camera on a counter in a bathroom and absented. Voyeurism of a 12-year-old child's genitals, to be clear. The photos depicted in whole the minor's body from her head to about her knees, and there was no focus or emphasis specifically on the genitals.  Excuse me? She was naked. She was naked, yes, Your Honor. And so to find him guilty of this, the jury was required to find that getting in and out of a shower and toweling off is sexually explicit conduct, something that most of us know. Was the jury entitled to consider the thousands of other images of child sexual abuse material that he had on his cameras and computers and also the other images of him with the 12-year-old child? Your Honor, according to the court's current case law, yes, it was. But I want to emphasize there are two requirements to show that something constitutes lascivious exhibition. The first is that the depiction displays or brings forth to view the genitals or pubic area of the child. And then the second, that there's a purpose of that to excite lessfulness or sexual stimulation in the viewer. So even if somebody took a picture of an entirely innocuous thing... Who was the viewer here? Only Mr. Doritis, and that's important. And was Mr. Doritis also convicted of other sexual conduct and images with him and this 12-year-old child? Yes, he was. Yes, he was. Those were quite different, and yet it's so... And you've already said the jury was entitled to consider all of that, correct? But still, the fact that those other circumstances don't change the fact that this particular image in this place depicted the forebody... I wonder why he downloaded it and looked at it repeatedly for the months following the time he took it. Your Honor, I don't deny... If it wasn't to excite a lustful purpose. Again, that's disputed that that happened, but yes, there... That's part of the evidence at trial that the jury convicted him on all these counts. Of course, Your Honor. And we can accept... I'll accept that the evidence proved that it was for his own sexual stimulation. And yet, if it were an innocuous picture that he found sexually stimulating, it still wouldn't be lascivious exhibition. If he found it sexually stimulating to look at a picture of a child who's fully dressed, that doesn't make it lascivious exhibition, Your Honor. And I want to point out that in Cortez... Counselor, can I ask you a question, please? Yes. I didn't... I may have missed this, but I was trying to figure out whether the fact that he destroyed or erased some of the evidence... Did that come in to play in the terms of either evidence that goes to the sufficiency or some sort of presumption? Was there any instruction given related to his destruction of the evidence? Your Honor, I don't know if there was an instruction directed to that. But before I leave this issue, I want to point out that in Cortez, the court specifically made distinctions between passive voyeuristic conduct and active manipulation of the scene, the minor's conduct, where a camera was pointed, and those things, and found that important. And specifically cited two cases in other circuits where there was mere nudity, as opposed to a case in the Eighth Circuit where the defendant positioned the child verbally and physically. And in Cortez, the defendant took a very active role in deciding where the camera was being pointed. Counsel, on that point, one way to look at this is if we just had Cortez. But after we had Cortez, we actually had four cases set for today that framed this issue of whether we should or should not consider these so-called dose factors. In the interim, our court held in Sanders that that was appropriate, those things could be considered. Obviously, that issue was important. It was important in this case and other cases, even with Cortez on the books. So doesn't Sanders expand, if you will, the way in which a conviction could be sustained? I mean, the factor that everyone was fighting about was the filmer's state of mind and purpose. And at the time of Cortez, that was something that was not as clear part of our law. For better or worse, you may disagree with it, but that's our law now, and that's a factor that can be considered. And, you know, why does that? I mean, it seems like that's pretty damaging to your argument. Well, Your Honor, Sanders, as you noted, does address the purpose to which the images will be used, the context, that sort of thing. And I return to my argument that the statute or the definition of lascivious exhibition has two components. One is the purpose for which the image will be used, and the other is, is the image itself lascivious? Does it draw attention, the photo itself, does it draw attention to a child's genitals or pubic area? To separate requirements and conflating? Does that require? May I hear you on that? And so the question would be, is positioning a photograph where that is going to be necessarily captured enough, or do you have to have, like, a zoom in or something like that? It seems like you're saying you have to have a zoom in as opposed to positioning a photograph where a child's genitals would necessarily be captured. I would say this case is the most innocuous and where the camera literally went from head to knee, the depiction, and you can barely see, you know, the outer perimeter of the pubic area. There's no spread legs. There's nothing of that nature. I would compare this case to the Ninth Circuit case in Spore, where it's much closer to a passive camera placement satisfying. I'm not sure that answered Judge Quattlebaum's question, or at least I didn't think it answered. His question, I think, is, are you saying that the requirement is that there be a zoomed-in focus on the genital area, or is it enough after Sanders that the camera just necessarily would have captured nudity without zooming in, which is what we have here? Okay, and I got a little hung up on the idea of zoomed in. But, no, there has to be an active, the depiction itself, the action, the conduct itself, has to involve something that focuses or brings attention to the genitals rather than the body as a whole. And that's what you think the law is after Sanders? Yes, Your Honor, I do. Let me also address. Based on some language in Sanders or based on the lack of language in Sanders? The lack of any modification of court aid on that point, and also to the definition as it exists. Sanders also quoted the definition that had been provided in court aid. It didn't change the definition. And so that definition stands, and it has two components. And I think that the first component was not met with respect to count one. And I do want to talk about count two. Count two, it depicted a casually curled hand with a flask of penis lying atop it. That's a very distasteful picture. But it's not. Speaking of the definition in 2251, it says the genitals of any person, not actually of a child, right? Your Honor, that's what the statute says. But the court, this court twice has said, first in court aid, it said that it has to be a display of the genitals or pubic area of children. And then in a footnote in Sanders. Were we purporting to interpret the statutory language about any person in those cases? Or did those cases actually involve pubic area of a child? They did, but I do want to point out that the court certainly had in mind whether it was a child or any person in this context, because the court in Sanders said in the context of child pornography cases. But we can't amend the statute, can we? No, you can't amend the statute. The statute clearly says of any person. The statute says of any person. So then the statute would make it a crime to use a minor to engage in or have a minor assist any other person to engage in lascivious exhibition of the genitals of any person. That's right, Your Honor. Is that what happened in count two? Excuse me? I think it seems like that's what happened in count two. That would be the government's strongest argument. And whether that is sexually explicit conduct. I'm talking. I'm sorry, Your Honor. The image is of an adult male penis. Yes, Your Honor. With a hand. Yes, Your Honor. Laying on top of it. Whose hand? Yes, Your Honor. Whose hand? Oh, a minor's hand. Okay. Then why isn't what Judge Ritchie said the end of your argument on that? The only reason I would suggest it's not the end of the argument is that this court, despite what the statute says, has held what it has held. And I don't know that this panel can argue on it. And you're talking about in Sanders? Excuse me? When you say this court has held what it has held, you're talking about Sanders? Yes, Your Honor. Yes, Your Honor. And so I also want to note that the picture does not denote, does not depict masturbation because there's no stimulation occurring. The hand merely provided a platform. And that's what I have to say about that. And it's not simulated either because there's no, it only generally suggests masturbation, does not show masturbation. I'd also like to, as far as the hearsay, the district court improperly excluded powerful exculpatory evidence in this case by finding that a command that Mr. Doritas gave to his wife was hearsay. It was not. And by precluding the admission of evidence that he had told the minor not to go in that bathroom, it impaired Mr. Doritas' ability to present his defense to Count One, and it robbed him of an opportunity to support his, establish his credibility to an important fact, which would have had an overall effect in the case because Mr. Doritas testified and provided explanations and contrary testimony to other witnesses, and he would have benefited greatly from being vindicated in one very important piece of testimony. I see that my time is. With respect to Count One, correct? That's, well, the statement was made with respect to Count One. That's where it's most obviously material, but also it impaired his credibility as a whole, so it would have affected the other three counts, Your Honor. Thank you. You have some time on rebuttal. Thank you. Mr. Enright. Thank you, Your Honor. May it please the Court, Anthony Enright for the United States. Mr. Doritas received a fair trial and an appropriate sentence. Obviously there are a few issues in this case. I'm happy to talk about them any way this Court would like. Well, I think Ms. Hayes does make a fairly good point about the Count One, the shower video not focusing on the genital area and in the way that we've seen in these other cases with lascivious exhibition materials. That may be true, Your Honor. There's no requirement that it zoom in or particularly focus on that. What Courtod said is that it has to be a depiction which displays or brings forth to view in order to attract notice to the genitals or pubic area of children in order to excite lustfulness or sexual stimulation in the viewer. What other courts have said, applying a very similar definition, is that that's really a jury question. If you've seen the images, the camera was designed to capture her above the knee. It's going to capture anyone in that house's genitals. But the purpose of doing it. Just to follow up or to interrupt you a little bit, I see your point that the jury could look at that, but we have this law out there that mere nudity is not sufficient. Yes, Your Honor. And so it seems like if mere nudity is not sufficient, we've got to do something more than just have a picture of a child who's nude. I agree. So tell me how this is more than mere nudity. Well, what this Court has said is there's three. You do need something where the purpose behind the image, the purpose of the exhibition, is to excite lustfulness or sexual stimulation in the viewer. And this Court's precedent identifies three ways to do that. One is within the four corners of the video itself or the image itself. And I think we have that here. This is clearly a hidden camera video in a place where people expect privacy. There's no purpose behind this type of an image, capturing this type of an image. I don't mean to cut you off here, but I think I'm not really challenging evidence of purpose. Certainly, Your Honor. But I'm trying to see whether there's a requirement for the image itself. Absolutely. So what courts have said, other courts applying the same kind of standard, has said is that lasciviousness is an attribute of the exhibition itself. And I think that is an attribute you can ascribe to the exhibition by looking at its four corners. But there's two other components, too. One is the context. This Court identified that in Cohen and in Sanders. And the context was this was somebody who had molested this victim before and taken photos of it, had a collection of, or not before but after, also this victim, though, and had put this camera in so that it would capture her on a teacher work day when she was home with this person, and then captured the victim. Alone, home alone. Home alone with the producer. And captured, took the, accessed those videos for the first time on that teacher work day. And that context makes clear that the purpose was to present her as a sexual object, to present this victim and to focus on her genitals, and to excite, create an exhibition to excite lustfulness and sexual stimulation. So if we just had this photograph, we didn't have counts two through four. All we had was count one. And we didn't have the context. I guess you have the same context about being alone. It seems like, I guess, the thing that's concerning a little bit about what you're saying is it feels like all the evidence that makes this more than mere nudity is what's in the defendant's state of mind and purpose. And I'm not sure that's fair. I'm not sure you don't have to get more from the image itself and not rely on the undeniable evidence of the intent and purpose of this defendant. There's two things I'd like to say in response to that, if Your Honor allows. One is that it would be a less strong case if we didn't have that other evidence. But I do believe this is a video where this court could say that a jury could reasonably find this meets the definition of lascivious exhibition in Cortot and in Sanders based on the four corners of it because it does feature her genitals in a not at all trivial way. It clearly depicts, this is an exhibition on a hidden camera in a bathroom. And what courts have looked at in this type of situation is, is there any purpose for which this exhibition could be intended by a viewer, not a viewer, by a producer, someone creating the image, other than to titillate, as the phrase this court used in Cohen, or to excite lustfulness or sexual stimulation or present the person as a sexual object. And the answer in this case is no. And certainly a reasonable jury could say the answer is no. There is no reason to depict a 12-year-old's genitals in a private place like a bathroom through a hidden camera other than to create core child pornography. So I think even if you looked at just the images, you would be able to affirm the count one. But I do think this is a case where there's so much other evidence that that was the producer's intent. And I think Cortot and especially Sanders and Cohen and some of the other decisions make clear that that is appropriately considered by the jury. Can you address the argument on the special assessment? I can. Your colleague says there were no findings. The statute seems to say there are findings. In fact, one really talking about the special assessment that talked about the defendant didn't have the ability to pay the fine. How do you, you know, what's, how do you, how do we sustain, what's the basis that we could sustain that? I think the answer is most clear in this court's decision in Kastner, which applied to fines. Which one? Kastner. It's one that I think both of us cited. And it applied the plain error standard to the fine statute. I think it's maybe 20 years old at this point. But what it held is that if there are factual findings in the pre-sentence report and the court adopts the pre-sentence report and the factual findings, not a balancing of all the factors, but factual findings that would enable appellate review, then this court can sustain it, particularly under a plain error standard. And I think this is almost the inverse of Kastner. Kastner, there was a lot of data that the person had a fair ability to pay, and it was a fraud offense. In this case, there are findings in that pre-sentence report about his ability to pay. It exists, but it's fairly limited. But there are also factual findings in that pre-sentence report about the horrific nature of this crime, and it is on a level that is unusually great. Not only is there the relationship the defendant had with the victim, but he also obstructed justice multiple ways. The court found he not only deleted the evidence as the police were knocking on his door, but he also committed perjury and lied under oath. It's such an extraordinary crime, and those findings are in the pre-sentence report, that the court could do exactly what he said he was going to do, which is to say it doesn't really matter how much he can pay. The seriousness of the offense is so great that the full amount of the assessments is appropriate. And I think this court can affirm, especially under the plain error standard, because there's no law that precludes such an analysis, and there's no law, settled law, that requires any more explicit findings. Even the fine precedent that my friend has asked this court to import here doesn't require a recitation of the factors on the record orally. It requires findings which can be the facts found in the pre-sentence report. Does the fact that the judge did reference the defendant's ability to pay, but in the context of a fine, that would seem to me to at least indicate to us that the court, it's not as though the court was unaware and didn't consider the appropriate factors, even if the court failed to announce them on the record. How does that play into our harmlessness part of plain error? I think that supports both the finding that there was not an error and that it was harmless. What the court did very clearly was not just with the fine, but said, I find he doesn't have the ability to pay a fine, and I don't really know what capacity he has to pay restitution or the other assessments. So I'm going to defer action on those. Nevertheless, I'm going to impose the full amount of the AVAA special assessment. So is there any reason to think that the amount of the assessment would have been different had the court walked through every statutory factor on the record? No. I think the court made very clear that regardless of his amount, his ability to pay, he didn't think that a lower assessment amount would be appropriate to fulfill the 3553A factors, including reflecting the seriousness of the offense. And that's an entirely reasonable judgment in a case like this. Maybe if it were a less serious offense, it would be a different story. But this offense is above and beyond even the ordinary child pornography production case. I do want to talk a bit about the hearsay statement. Your Honor, the defendant's opening to the jury was that's the one room the victim wasn't allowed in and then sought to introduce this statement. The court reasonably interpreted it as offered to prove the truth of the matter asserted. I think this is one of those close. What is the matter? What is the truth? What is the fact asserted if the statement is he told me not to let her go in there? What's the fact that's being? The assertion is she's not allowed in that bathroom. Well, no, hearsay is like he told me the light was red. You can't introduce that to prove the light was red because you have to bring in the person who saw the light, right, and who said it. But here, he told me not to let her go in there. You're trying to prove he told you that, and the person who should testify is the person who heard him say that. It could, Your Honor. I mean, I think this is one of those questions that is a close one. This court has made clear that what the district court's role, I know my friend has made a point this is a de novo question, and certainly the definition of the hearsay role is, the definition of the hearsay, the interpretation of the hearsay rule is, but the question of what is this really being offered for or what is really being asserted here, those are questions for the district court. And I think it's reasonable for the district court to say what you're asking her to say, to recite, is this assertion that he's not, she's not allowed in the bathroom. Well, he claims it's to prove that he said that because that's relevant to his state of mind. That's, he did, and that's, I think, supports the discretion of the district court here, because state of mind is a different thing from, it's not. Is it a discretionary question to say whether it's hearsay or not? I think it is, Your Honor, because what the district court's role is to decide what this is offered for, the purpose for which it is offered. And he said three things. He said, one, it's a command, so it doesn't matter, which is not correct. It's a command maybe, but if it's offered to prove an assertion that it includes, then it's going to be hearsay. He also said it's not offered for the truth of the matter asserted, and it doesn't matter if it's true, which kind of contradicts what he told the jury in his opening statement, because he's told the jury in the opening statement she wasn't allowed in the bathroom. So if that's not true, it doesn't support that. I'm sorry, Your Honor. Just because, I mean, I hear you, that, you know, opening statement, but, I mean, I don't know that the fact about whether she was allowed precludes there to be, for a defendant to introduce evidence about his or her state of mind. And it seems as if this, to follow up on Judge Rushing's comment, that the fact that he said it is indicative or goes to that more than whether or not as a, you know, broad proposition she was allowed or disallowed. I think that's a stronger argument than the one Mr. Derides made to the court when trying to introduce this. He said it wasn't offered to prove the truth of the matter asserted. The argument I think you're describing is one that it is offered for the truth of the matter asserted, but it falls within the state of mind exception. And the district court could properly have excluded it under the state of mind exception, had that been invoked. I will note that my friend has disclaimed any reliance on any exception, so I think that would be the end of it. But the court could have easily declined to apply the state of mind exception, because that has to be the declarant's then existing state of mind. And what he didn't say is when he made this statement. And the only time it's relevant is, what was his state of mind on October 29th, 2018? And without any indication of when it was said, the court could easily say, that has little to no relevance. So I think it was within the court's discretion. But I don't want to understate the fact that I think we have an awfully strong harmless error case. I mean, he had to turn on the camera that day. Is that, was that in the, I mean. He had to set it up so that it would record on that day. And he did. We know that it was accessed, it filmed on that day. And we know that it was accessed on that day. So he knew it was set up to work that day. And that's the day that the. She was home alone. The wife was not there. Was not there. And he testified that I bought the camera in October. So he had gotten the camera at most shortly before that day. We also have evidence. There's no other. There were tons of images, thumbnail images on his computers. But the only ones of that bathroom were of that victim on that day. And we have, of course, the evidence that he was taking other photos of her, molesting her in her sleep. And we have a collection of other child pornography from the Internet. The evidence, this court can say with fair assurance, probably even beyond a reasonable doubt, although that's not the standard, that the jury would have reached the same verdict had it heard. It also heard this evidence. It heard Dorita say it. And without any timing component, it's just not that strong. But I think this court can easily say that the court would have, under any harmless error standard. I don't have a ton of time. I do want to talk about the 2703F preservation order. That's not a seizure. The court in the Bank Secrecy Act case we cited, Cal Bankers Association held, the Supreme Court held the mere requirement to preserve records doesn't offend the Fourth Amendment. And it addressed the search component and the seizure component and held as much. And that's consistent with several other cases that have come out. Hicks v. Arizona, recording information, making a permanent record of it, copying information, not a seizure, taking photos of evidence, not a seizure. And, of course, it's been 40 years, 35 years, no court's ever held this to be a seizure or any other comparable preservation requirement. I do want to emphasize there are two other ways this court could affirm the suppression decision without reaching that issue. One is that it wasn't fruit. We represented to the court that we had another copy that was in the e-mail file separate from the preservation copy. That was not disputed. So this court can affirm on that ground. And the second is that the good faith. If it had not been in that second data set, the live, right, that second data set was the live data, right, what was actually captured that day, would that have been detrimental for the defendant? That would have shown that he deleted it, right, between the time of the preservation and the day it was, the data was collected. I think that probably could have been detrimental. Obviously, if the preservation copy were suppressed, then he may have been in luck there. But that wouldn't have, yeah, it generally is, there's not a right to delete data during appending, relevant data during appending. Yeah, you're right about that. I was curious about whether there hasn't been an argument, but whether there can be an argument that that kind of would still be fruit. You know, if the tree were poisonous, that it would still be fruit, because he knew better than to delete something that the government had already preserved. I don't think so. So to answer that question, it hasn't been raised. The answer to that, I think, is actually in the rather old case of Wong Sun. Wong Sun himself, he had been, I think it was an illegal arrest, but then he was released on his own recognizance, and then he came back and talked to officers. The Supreme Court held that sufficiently attenuated to be purged of the primary taint, so it's not subject to suppression, even though there's a but-for causal relationship. And I think this is kind of, the scenario you're describing is kind of on all fours with that, if the only motivation were I don't want to delete this. Counsel, before you sit down, I just want to make sure I understand the evidence back to the sufficiency on count one. Sure. Due to the destruction of the video, is the evidence we have of the video, the thumbnail images of what would have been there had it not been destroyed? Yes, Your Honor. And testimony that videos were taken, kind of forensic testimony and things like that? Yes, Your Honor. We don't have the video itself anymore. We look at the thumbnails that give us an indication. That is correct. Now, I want to emphasize the thumbnails are themselves visual depictions of sexually explicit conduct. I'm not saying it's just circumstantial evidence of what existed, but there was at one point a video. The video was destroyed, appears to have been destroyed after police knocked on the door. It was saved in multiple locations. Those two drives happened to be deleted. I just wanted to make, I've tried to get clear on that. Thank you. Certainly, Your Honor. I see I'm out of time. If this court has no further questions, I will ask this court to affirm the judgment of the district court. All right. Thank you. Thank you, Your Honor. Ms. Hayes? Yes, I'll address the special assessment issue. My fellow counsel here encourages the court to affirm that assessment based on the district court's finding in the context of determining the custodial sentence to impose that the conduct was very serious. And, of course, it was. The fact that the judge at some point during the sentencing hearing noted one factor under 3553A does not excuse the court's failure to address any of the factors under Section 3572, which was required by the statute authorizing the assessment. So the judge's failure to make any findings about that precludes the assessment or at least requires a remand for the judge to consider those factors in determining the amount of the assessment. And we know that the judge probably did not consider any financial information, but we know for a fact that the judge did not consider the amount of restitution that would be imposed, which is required. We know he was contemplating the defendant's finances, right? I mean, he talked about it in a way that you say helps your case concerning the fact that he was aware of this cryptocurrency and wasn't familiar with it. So he was certainly, the record indicates he was thinking about ability to pay. You may want more explicit findings. I understand your point there, but it doesn't seem like you can deny that that was something he was considering. The fact that he considered it actually illustrates the fact that he made no findings about it, that he was waiting, even for the purpose of imposing restitution, to see what the financial situation was, because he didn't know. And to the point that my fellow counsel says that making findings wouldn't have changed the outcome, I have to adamantly disagree with that. Making findings is not an empty exercise. Making findings is a way to guide the judge's decision-making process and make sure that the necessary information has gone into the decision. So that assessment must be denied. The last thing I'll say about the assessment is the government's not going to benefit at all from this assessment. Mr. Derides is never going to be able to pay this. He's going to be in his 70s when he's released from prison. He's never been a good earner. So the government is unlikely to benefit much from this assessment, and yet it will be a tremendous hardship for Mr. Derides to go through his life with this unpayable debt hanging over his head. In terms of the hearsay argument, we're talking about a question of law definitely in terms of the judge deciding that something is or is not hearsay. The discretionary decisions are made with respect to exceptions and exemptions, but in terms of does this meet this requirement, that's a question of law. What about the argument that if it was error, it was harmless, considering all of the other evidence here? I disagree, Your Honor, because evidence that corroborates a defendant's testimony is of a special nature. To get rid of that testimony strongly impairs his ability to present a defense. It affected every component of this case, because he testified with respect to each count of conviction, and in each count there was conflicting testimony about whether he committed the crime. Particularly with respect to count one, there was conflicting evidence. Count four, there was strongly conflicting evidence about whether he had intentionally downloaded child pornography or whether it was part of a job that happened automatically. Everything in this case came down to his credibility, and so there is no way that it can be rendered harmless, Your Honor. And lastly, in my last 26 seconds, I want to just repeat that Mr. Derides was convicted in count one of causing a child to engage in sexually explicit conduct by taking a photograph of a child. Almost full-body picture of her getting in and out of a shower. The only thing that, if I might speak for five more seconds, the only thing it seems would support in anybody's view that this is a crime is the purpose for which it was taken, and I want to just point out, Mr. Derides was an audience of one. There's no evidence in this case that he ever intended to share that with any other audience. It was a perfectly subjective assessment. Thank you. That was 20 seconds. But Ms. Hayes, the Court does want to acknowledge that you're court-appointed, and we appreciate your representation on behalf of the Court. And we also appreciate you, Mr. Enright, and your work on behalf of the United States. So we will come down and greet counsel and adjourn court. This honorable court stands adjourned. God save the United States and this honorable court.
judges: Stephanie D. Thacker, A. Marvin Quattlebaum Jr., Allison J. Rushing